ISABELLE ORD (SBN 198224)
isabelle.ord@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

MATTHEW C. DANAHER (SBN 351055)
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Telephone: 858.677.1400
Facsimile: 858.677.1401

Attorneys for Defendant
DYSON DIRECT, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JOSE ORTIZ and CHRISTINA NEDREBO, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

DYSON DIRECT, INC.,

Defendant.

Case No. 4:26-cv-07052-AMO

**DEFENDANT DYSON DIRECT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Judge: Hon. Araceli Martínez-Olguín
Courtroom: Courtroom 5
Oakland Courthouse
1301 Clay Street, 2nd Floor
Oakland, CA 94612
Date: January 21, 2027
Time: 2:00 p.m.

Complaint Filed: July 10, 2026

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE THAT on January 21, 2027 at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Araceli Martínez-Olguín, United States District Judge, Northern District of California, located at the Oakland Courthouse, 1301 Clay Street, Courtroom 5, 2nd Floor, Oakland, California 94612, Defendant Dyson Direct, Inc. ("Dyson") will, and hereby does, move to dismiss the Complaint of Plaintiffs Jose Ortiz ("Ortiz") and Christina Nedrebo ("Nedrebo") (collectively, "Plaintiffs") under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing and under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief may be granted. The Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities and Request for Judicial Notice ("RJN") therein, the Declaration of Matthew C. Danaher ("Danaher Decl."), all pleadings and papers on file in this matter, and such other and further evidence and argument as may be presented at the time of the hearing or otherwise.

Dyson moves to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that Plaintiffs fail to allege an actual and concrete injury-in-fact sufficient to confer Article III standing. Dyson moves to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs fail to plead timely claims for: (1) an invasion of privacy or intrusion upon seclusion claim; (2) violations of the California Invasion of Privacy Act's ("CIPA") wiretapping provision, or pen register provision, Cal. Penal Code § 638.51(a); (3) fraud, deceit, and/or misrepresentation; (4) unjust enrichment; or (5) public injunctive relief. Plaintiffs' fraud, deceit, and/or misrepresentation claim also fails under Federal Rule of Civil Procedure 9(b). For each and all of these reasons, Dyson's Motion should be granted.

Dated: September 9, 2026

DLA PIPER LLP (US)

By: /s/ *Isabelle Ord*
ISABELLE ORD
*Attorneys for Defendant*
*DYSON DIRECT, INC.*

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....... 1

II. STATEMENT OF FACTS ....... 2

A. The Dyson Website ....... 2

B. Plaintiffs' Interactions with the Website ....... 2

III. ISSUES TO BE DECIDED ....... 3

IV. LEGAL STANDARDS ....... 4

A. Rule 12(b)(1): Standing ....... 4

B. Rule 12(b)(6): Failure to State a Claim ....... 4

C. Rule 9(b): Pleading Standard for Fraud-Based Claims ....... 4

V. PLAINTIFFS LACK ARTICLE III STANDING – NO INJURY-IN-FACT ....... 5

A. No Collection or Disclosure of Plaintiffs' Personal Information ....... 5

B. None of the Allegedly Collected Information Is Actionable ....... 6

C. Plaintiffs Fail to Allege Their Information Diminished in Value ....... 8

VI. PLAINTIFFS FAIL TO PLEAD THEIR CLAIMS ....... 9

A. Plaintiffs' Non-Personalized Allegations Do Not Satisfy Rule 8 ....... 9

i. Invasion of Privacy and Intrusion Upon Seclusion Claims ....... 10

ii. CIPA Wiretapping and Pen Register Claims ....... 10

iii. Unjust Enrichment Claim ....... 11

B. Plaintiffs' Claims Fail Under Rule 8 Because Plaintiffs Fail to Adequately Plead When Their Claims Arose or Application of the Discovery Rule. ....... 11

VII. CLAIMS 1–2: PLAINTIFFS' INVASION OF PRIVACY CLAIMS FAIL TO ALLEGE INTENTIONAL OR "HIGHLY OFFENSIVE" CONDUCT ....... 12

i. Plaintiffs Fail to Allege an Intentional Invasion of Privacy ....... 13

ii. Plaintiffs' Allegations Preclude a Reasonable Expectation of Privacy ....... 13

iii. The Disclosure of the Information Is Not Highly Offensive .....................13

VIII. CLAIMS 3–4: PLAINTIFFS' CIPA CLAIMS FAIL.....................................................14

A. The Section 631(a) Wiretapping Claim Fails to Allege the Contents of Plaintiffs' Communications or Intent to Commit an Unlawful Wiretap................14

i. No Direct Liability Under Section 631(a)'s First Three Clauses .............15

ii. No Aiding and Abetting Liability Under the Fourth Clause......................16

B. Plaintiffs' Section 638.51 Pen Register Claim Fails Because It Does Not Apply to the Internet and, Regardless, Statutory Exclusions Apply......................18

i. The Statute's Plain Language Excludes Website Tracking Technology .........................................................................................19

ii. The Statute's Legislative History Excludes Website Tracking Technology .........................................................................................20

iii. Plaintiffs Plead These Tools Generally Capture Contents.........................21

IX. CLAIM 5: PLAINTIFFS' FRAUD CLAIM FAILS .......................................................21

A. Plaintiffs Fail to Plead Their Claim with Particularity Under Rule 9(b) ...............22

B. Plaintiffs Fail to Allege Resulting Damages........................................................22

X. CLAIM 6: PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS .............................23

A. This Equitable Claim is Foreclosed by *Sonner v. Premier Nutrition Corp.*..........23

B. Plaintiffs Fail to Allege Dyson Retained Any Benefit..........................................24

XI. PLAINTIFFS' REQUEST FOR PUBLIC INJUNCTIVE RELIEF FAILS ......................24

XII. CONCLUSION.........................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 4

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ..... 24

*In re Asyst Techs., Inc.*,
No. C-06-04669 EDL, 2008 WL 2169021 (N.D. Cal. May 23, 2008) ..... 12

*B.K. v. Desert Care Network*,
2024 WL 5338587 (C.D. Cal. Aug. 22, 2024) ..... 17, 18

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) ..... 11

*Barrales v. Reckitt Benckiser LLC*,
2026 WL 2212867 (N.D. Cal. July 31, 2026) ..... 6, 8, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 4, 9

*Blaker v. NetScout Sys., Inc.*,
2026 WL 1709143 (Cal. Super. Ct. May 27, 2026) ..... 19

*Briskin v. Shopify Inc.*,
2026 WL 161441 (N.D. Cal. Jan. 21, 2026) ..... 18

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ..... 11

*Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ..... 5

*California Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) ..... 24

*California Pac. Reg'l Med. Ctr. v. Glob. Excel Mgmt., Inc.*,
2013 WL 2436602 (N.D. Cal. June 4, 2013) ..... 20

*Campbell v. Select Med. Corp.*,
2026 WL 2056651 (C.D. Cal. July 14, 2026) ..... 7

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ..... 10

*Crano v. Sojern, Inc.*,
2026 WL 1670136 (N.D. Cal. June 9, 2026) .......... 5

*D'Antonio v. Smith & Wesson Inc.*,
820 F. Supp. 3d 928 (N.D. Cal. 2026) .......... 11

*Daghaly v. Bloomingdales.com, LLC*,
2024 WL 5134350 (9th Cir. 2024) .......... 10

*Daniels-Hall v. National Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .......... 4

*De Ayora v. Inspire Brands, Inc.*,
2026 WL 1653483 (N.D. Cal. June 8, 2026) .......... 12

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 9

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 17

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) .......... 5, 9

*Firlej v. Petrosian Esthetic Enters., LLC*,
2026 WL 2575938 (C.D. Cal. Aug. 31, 2026) .......... 16

*Flat v. Ford Motor Co.*,
678 F. Supp. 3d 1138 (N.D. Cal. 2023) .......... 12

*Fox v. Ethicon Endo-Surgery, Inc.*,
110 P.3d 914 (Cal. 2005) .......... 12

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) .......... 8

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 21

*Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026) .......... 14

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 11, 16

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 13

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) .......... 8

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) ....................23

*Grigorian v. Citibank, N.A.*,
2024 WL 2106944 (C.D. Cal. Apr. 17, 2024) ....................25

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) ....................23

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................12

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ....................9

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ....................13

*Heiting v. FKA Distributing Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ....................4

*Helm v. Alderwoods Grp., Inc.*,
696 F. Supp. 2d 1057 (N.D. Cal. 2009) ....................21, 22

*Henry's Bullfrog Bees v. Sunland Trading, Inc.*,
2026 WL 1469863 (9th Cir. May 26, 2026) ....................22

*Hoffman v. Life Ins. Co. of the Sw.*,
740 F. Supp. 3d 918 (N.D. Cal. 2024) ....................19

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ....................22, 23, 24

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................13

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ....................12

*Jones v. L.A. Cent. Plaza LLC*,
74 F.4th 1053 (9th Cir. 2023) ....................4

*Keilholtz v. Lennox Hearth Prods.*,
2009 WL 2905960 (N.D. Cal. Sept. 8, 2009) ....................12

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ....................7

*Khan v. ChargePoint Holdings, Inc.*,
2026 WL 483060 (N.D. Cal. Feb. 20, 2026) ....................21

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................15

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
940 F.2d 397 (9th Cir. 1991) ....................22

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................4

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) ....................6, 7

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....................15

*McGill v. Citibank, N.A.*,
393 P.3d 85 (Cal. 2017) ....................25

*Merical v. The Joint Corp.*,
2026 WL 2225531 (E.D. Cal. Aug. 3, 2026) ....................5

*Mikulsky v. Noom, Inc.*
682 F. Supp. 3d 855 (S.D. Cal. 2023)....................6

*Mitchell v. Skillz Platform Inc.*,
2026 WL 2212876 (N.D. Cal. July 31, 2026) (Martínez-Olguín, J.)....................23

*Mitchener v. CuriosityStream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ....................7

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ....................21

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ....................4

*O'Neill v. California Physicians' Serv.*,
2025 WL 3207416 (N.D. Cal. Nov. 17, 2025) ....................12

*Ortiz v. Foris Dax, Inc.*,
2026 WL 1430720 (N.D. Cal. May 21, 2026) ....................11

*Ortiz, et al. v. Deckers Outdoor Corp.*,
No. 3:25-cv-09631-RFL ....................2

*Ortiz, et al. v. Deckers Outdoor Corp.*,
2026 WL 1243675, at *3 (N.D. Cal. May 6, 2026) ....................16

*Ortiz, et al. v. Foris Dax, Inc.*,
No. 3:25-cv-08950-EMC ....................2

*Ortiz, et al. v. Kenneth Cole Prod., Inc.*,
No. 3:26-cv-00771-TLT ....................2

*Pemberton v. Rest. Brands Int'l, Inc.*,
2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) ....................8

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1222 (N.D. Cal. 2014) ....................20

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................6, 7

*Rabin v. Google LLC*,
2023 WL 4053804 (N.D. Cal. June 15, 2023) ....................24

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ....................7, 8

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ....................15

*Rodriguez v. IMDB.com, Inc.*,
2026 WL 886927 (Cal. Super. Mar. 24, 2026) ....................21

*Rodriguez v. Ink America Int'l Group, LLC*,
2025 WL 4034985 (Cal. Super. Dec. 10, 2025) ....................20

*Schallert v. Laird Superfood, Inc.*,
2026 WL 1707585 (C.D. Cal. June 5, 2026) ....................5

*Schallert v. Palo Alto Networks, Inc.*,
2026 WL 754028 (Cal.Super. Mar. 06, 2026) ....................19, 20

*Shah v. Talentbridge, Inc.*,
2026 WL 1507888 (C.D. Cal. May 28, 2026) ....................7

*Shulman v. Group W Prod., Inc.*,
955 P.2d 469 (Cal. 1998) ....................13

*Sisti v. Bosley Inc.*,
831 F. Supp. 3d 979 (C.D. Cal. 2026) ....................9

*Smith v. Maryland*,
442 U.S. 735 (1979) ....................18

*Smith v. YETI Coolers, LLC*,
2025 WL 877127 (N.D. Cal. Mar. 14, 2025) ....................17

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ....................16, 17

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....................23, 24

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016), *as revised* (May 24, 2016)....................4

*Svenson v. Google Inc.*,
2016 WL 8943301 (N.D. Cal. Dec. 21, 2016)....................9

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....................15

*Tavernetti v. Superior Ct.*,
583 P.2d 737 (Cal. 1978) ....................15

*United States v. Gonzalez, Inc.*,
412 F.3d 1102 (9th Cir. 2005), *amended on denial of reh'g*, 437 F.3d 854 (9th Cir. 2006) ....................18

*Valenzuela v. Kroger Co.*,
2025 WL 851075 (C.D. Cal. Mar. 13, 2025)....................16

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ....................22

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025)....................14, 23

*Welborn v. IRS*,
218 F. Supp. 3d 64 (D.D.C. 2016)....................9

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ....................4

*Wiley v. Universal Music Grp., Inc.*,
826 F. Supp. 3d 1121 (N.D. Cal. 2025) ....................11, 22

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................14

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................10

**Statutes**

Cal. Civ. Proc. Code § 335.1....................11

Cal. Penal Code § 631(a) ........ *passim*

Cal. Penal Code § 638.50(b) ........ 11, 21

Cal. Penal Code § 638.51 ........ *passim*

Cal. Penal Code § 638.52 ........ 19

Cal. Penal Code § 638.52(c) ........ 19

Cal. Penal Code § 638.52(d)(1) ........ 19

Cal. Penal Code § 638.52(d)(3) ........ 19

**Other Authorities**

Fed. R. Civ. P. 8 ........ 1, 9, 11, 21

Fed. R. Civ. P. 9(b) ........ 1, 4, 22

Fed. R. Civ. P. 12(b)(1) ........ 4

Fed. R. Civ. P. 12(b)(6) ........ 4, 9

Fed. Rule of Evid. 201 ........ 19, 20

Senate Bill 690 ........ 18

Senate Committee on Public Safety Analysis of California Assembly Bill 929, California 2015-2016 Regular Session (June 16, 2015) ........ 20

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This lawsuit seeks to conjure liability out of generalized allegations about website tracking technologies that lack even basic facts about Plaintiffs' individual experiences or how they were harmed. The crux of Plaintiffs' Complaint is that, upon visiting dyson.com (the "Website"), they opted out of certain categories of cookies through the Website's preference center ("Preference Center"), but that these cookies continued to operate and transmit data to third parties. *See* Compl. ¶¶ 32, 88-89, 98-99. Absent from Plaintiffs' Complaint is any allegation that Dyson ***intended*** this to happen—or that it actually caused Plaintiffs' private information to be collected or disclosed to third parties. Plaintiffs' Complaint should be dismissed for multiple, independent reasons:

*First*, Plaintiffs fail to allege they suffered an actual injury-in-fact sufficient to confer Article III standing because they do not allege any of their personal information was actually collected or disclosed or that they were injured by any alleged disclosure.

*Second*, the entire Complaint fails under Rule 8 because Plaintiffs do not plausibly allege (a) any of their own information was actually collected or (b) facts sufficient to invoke the delayed discovery rule.

*Third*, Plaintiffs' invasion of privacy and intrusion upon seclusion claims fail to allege the requisite intentional or "highly offensive" conduct.

*Fourth*, Plaintiffs' CIPA claims fail because Plaintiffs do not allege Dyson or any third party intended to commit an unlawful "wiretap," and Plaintiffs expressly plead themselves out of their "pen register" claim by alleging the cookies generally capture "some" data elements that can be "contents" of communications.

*Fifth*, Plaintiffs' claim for fraud fails because Plaintiffs do not plead the "who, what, when, where, and how" of the alleged misconduct under Rule 9(b) or resulting damages.

*Sixth*, Plaintiffs' unjust enrichment claim fails because they cannot plead lack of an adequate remedy at law and have not identified any benefit conferred on Dyson or expense they incurred.

*Seventh*, Plaintiffs' purported claim for public injunctive relief fails because Plaintiffs do

not actually plead such a claim or pray for relief for the general public.

For each and all of these reasons, the Complaint should be dismissed.

## II. STATEMENT OF FACTS

### A. The Dyson Website

Dyson manufactures and sells consumer appliance products. Compl. ¶ 26. Dyson also owns and operates the Website, through which users may browse for and purchase Dyson's products. *See id.* Like countless other websites, the Website uses first and third-party cookies. *See id.* ¶ 21. The Website also contains a pop-up cookie notice (the "Cookie Banner"). *See id.* ¶ 1. Through the "Cookie Banner," a user may either choose to "Accept All Cookies" or click the "Cookie Settings" link to configure their cookie selections.[1] *Id.* ¶¶ 1, 29, 31. The Preference Center links users directly to a "Cookie Settings" pop-up window, where users may choose whether to enable or disable "Targeting Cookies," "Functional Cookies," and "Performance Cookies." *Id.* ¶¶ 30-31. The Preference Center informs users that the Website, like "any website," "may store or retrieve information on your browser, mostly in the form of cookies," which "might be about you, your preferences on your device," and "does not usually directly identify you, but it can give you a more personalized web experience." *Id.* ¶ 31. The Cookie Banner also notes that "you can choose not to allow some types of cookies" through toggling certain cookie categories on or off. *Id.*

### B. Plaintiffs' Interactions with the Website

Ortiz is a frequent litigant in "cookie banner" cases and has been a named plaintiff in several such lawsuits his counsel has filed in this district.[2] Ortiz alleges he visited the Website "on one or more occasions during the last four years." *Id.* ¶ 86. Ortiz "visited the Website to research air purifiers and other household products, including vacuum cleaners and floor-care products" and "reviewed product features and specifications, browsed product categories, viewed customer reviews, and compared available products and promotions in connection with a potential

---

[1] Dyson reserves the right to later contest these allegations. Since at least January 2025, the Cookie Banner has displayed "Manage Cookie Settings" and "OK" buttons.

[2] *See Ortiz, et al. v. Foris Dax, Inc.*, No. 3:25-cv-08950-EMC (identical case filed October 17, 2025); *Ortiz, et al. v. Deckers Outdoor Corp.*, No. 3:25-cv-09631-RFL (identical case filed November 7, 2025); *Ortiz, et al. v. Kenneth Cole Prod., Inc.*, No. 3:26-cv-00771-TLT (identical case filed January 23, 2026).

purchase." *Id.* Nedrebo similarly alleges that she visited the Website "during the last four years" with the intent to "research replacement parts and product-support information relating to a Dyson product she owned, including troubleshooting issues she was experiencing with the product and reviewing information regarding replacement batteries and related product solutions"—however, she does not actually allege browsing the Website or visiting specific pages.

Plaintiffs allegedly encountered the Cookie Banner, selected the "Cookie Settings" link, and "adjusted the toggle switches to reject all cookies, including all Targeting, Functional, and Performance cookies, other than those strictly necessary for the Website to function, confirmed [their] choices by clicking or selecting the 'Confirm My Choices' button, and proceeded to browse the Website."[3] *Id.* ¶¶ 89, 99. Plaintiffs' "private" communications with the Website were then allegedly intercepted by and disclosed to the third parties without consent. According to the Complaint, Plaintiffs "were unaware" of this alleged conduct when they visited the Website, *id.* ¶ 15, and "could not reasonably have discovered this conduct at the time of their visits to the Website . . . ." Plaintiffs do not allege how or when they became aware of the alleged conduct.

Plaintiffs do not allege any specific pages they viewed, searches they ran (or any URLs generated from those searches), any personal or non-personal information they entered on the Website, any purchases on the Website, or receiving any targeted advertisements after visiting the Website.[4]

## III. ISSUES TO BE DECIDED

A. Have Plaintiffs failed to plead an injury-in-fact to establish Article III standing?

B. Have Plaintiffs adequately pled application of the discovery rule?

C. Have Plaintiffs stated claims for: (1) invasion of privacy; (2) intrusion upon seclusion; (3) wiretapping in violation of CIPA § 631(a); (4) use of a pen register in violation of CIPA § 638.51; (5) common law fraud, deceit, and/or misrepresentation; and/or (6) unjust enrichment?

D. Have Plaintiffs stated a claim for public injunctive relief?

---

[3] Dyson reserves the right to later contest these allegations. At all relevant times, the Cookie Banner has disabled these categories by default.

[4] Dyson reserves the right to compel Plaintiffs' claims to arbitration based on information that may be disclosed during the course of the lawsuit.

## IV. LEGAL STANDARDS

### A. Rule 12(b)(1): Standing

A complaint should be dismissed where the court lacks subject matter jurisdiction because the plaintiff lacks Article III standing. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023). The plaintiff, as "[t]he party invoking federal jurisdiction[,] bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants [a person a statutory] right and purports to authorize [that person to sue] to vindicate that [right]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016), *as revised* (May 24, 2016). Rather, "[a] plaintiff establishes an injury in fact when she shows that she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.'" *Heiting v. FKA Distributing Co.*, 2025 WL 736594, at *2 (C.D. Cal. Feb. 3, 2025) (quoting *Spokeo*, 578 U.S. at 339).

### B. Rule 12(b)(6): Failure to State a Claim

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts do not have to "accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

### C. Rule 9(b): Pleading Standard for Fraud-Based Claims

Claims sounding in fraud are subject to Fed. R. Civ. P. 9(b). A plaintiff must "state with particularity the circumstances constituting fraud or mistake," including the "who, what, when, where, and how" of the alleged misconduct, and explain what is false or misleading about the

purportedly fraudulent statement, and why it is false. *Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

## V. PLAINTIFFS LACK ARTICLE III STANDING – NO INJURY-IN-FACT

Plaintiffs offer two theories of alleged harm—(i) a privacy interest in their information or (ii) diminishment of the value of their information—but neither is a cognizable injury-in-fact because Plaintiffs fail to allege the collection of *their* information, that any information collected was sensitive, or that their information actually lost value.

### A. No Collection or Disclosure of Plaintiffs' Personal Information

"[S]ince this is a class action, at least one of the named plaintiffs must have suffered an injury in fact." *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015); *Crano v. Sojern, Inc.*, 2026 WL 1670136, at *4 (N.D. Cal. June 9, 2026) ("Plaintiff must have personal standing . . . . That is, Plaintiff must allege Sojern collected *her* private information and used that information to create a profile about her which it then provided to or used on behalf of third-party marketing clients"). "[T]o survive a motion to dismiss, a plaintiff must identify the 'specific personal information she disclosed that implicates a protectable privacy interest.'" *Merical v. The Joint Corp.*, 2026 WL 2225531, at *4, 13 (E.D. Cal. Aug. 3, 2026) (noting cases like this one "have proliferated in the courts recently, thus, the Court is struck that Plaintiff fails to allege what 'other information related to her appointment booking' she entered into the Website"); *Schallert v. Laird Superfood, Inc.*, 2026 WL 1707585, at *5 (C.D. Cal. June 5, 2026) (finding no standing because "[a]llegations about what the website *could* capture, as opposed to what it *did* capture from Plaintiff, are insufficient to confer standing").

Plaintiffs fail to allege that they disclosed, and the "Third Parties" collected, any of their private information, and thus, that any injury occurred. Although the Complaint alleges certain data elements are "Private Communications" that *may* be disclosed to third parties through website interactions, *see, e.g.*, Compl. ¶¶ 3, 24, 38, 41-44, 81, the Complaint does not allege that ***Plaintiffs*** entered any personal or sensitive information on the Website. At most, they claim they visited the Website to "research," "browse[]," "review[]," and "compare[]" information about Dyson's products, but do not allege any of their sensitive information was disclosed during such

visits. *See id.* ¶¶ 86, 96.

Judge Labson Freeman recently dismissed a complaint for lack of standing in an identical case brought by Plaintiffs' counsel because (like here) "[t]he complaint . . . is light on details regarding the named Plaintiffs' specific experiences with Defendant's websites. Instead, most of the allegations are framed in terms of the collective class experience or the experience of a composite consumer[.]" *Barrales v. Reckitt Benckiser LLC*, 2026 WL 2212867, at *4 (N.D. Cal. July 31, 2026). Because Plaintiffs do not allege the collection of any private information, they likewise fail to allege the disclosure of any private information. *See, e.g.*, *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864-65 (S.D. Cal. 2023) (no standing because failure to specify personal information collected precluded determination of whether it "is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest"). Because Plaintiffs do not allege what, if any, sensitive information was actually captured, their claims must be dismissed.

### B. None of the Allegedly Collected Information Is Actionable

Even if Plaintiffs provided information to the Website, they lack a legally protectable interest in the type of information they allege the Website captures. In *Popa v. Microsoft Corp.*, the Ninth Circuit held that "a court [must] assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system" and Article III standing is not conferred whenever a "privacy statute[]" is violated. 153 F.4th 784, 791, 794 (9th Cir. 2025). *Popa* clarified that the fundamental standing inquiry is whether a user's interaction results in "any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law," including the torts of "intrusion upon seclusion" and "public disclosure of private facts." *Id.* at 791. There must be "***embarrassing, invasive, or otherwise private information*** collected," to establish a cognizable injury. *Id.* (emphasis added).

Court decisions post-*Popa* confirm this rule. For example, in *Maghoney v. Dotdash Meredith, Inc.*, there was no privacy interest in the plaintiff's "health-related searches typed into the Website" "related to symptoms, contraction, and the treatment of chlamydia" (among other information), or "page navigation history, and metadata associated with his site visit, including

his [IP] address and device identifiers." *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *1, 2 (S.D. Cal. Feb. 23, 2026). The plaintiff failed to allege that "his searches were directly linked to his name or other personally identifiable information." *Id. at *5.* "At most, the data was associated with an IP address and other metadata . . . which does not automatically qualify as personally identifiable information." *Id.*; *see also Campbell v. Select Med. Corp.*, 2026 WL 2056651, at *3 (C.D. Cal. July 14, 2026) ("That an individual searched for certain health related information on the internet does not reveal any private or sensitive information about that specific person."). Similarly, as to search terms, the court in *Shah v. Talentbridge, Inc.* found no standing because "[e]ven if [it] presume[d] that Plaintiff entered the exact search terms 'felony-friendly jobs' and 'jobs no background check' near Los Angeles, Plaintiff has not shown a protectable privacy interest in these generic search terms that may reveal the searcher's interests but are not linked to [p]laintiff's identity." *Shah v. Talentbridge, Inc.*, 2026 WL 1507888, at *3 (C.D. Cal. May 28, 2026).

A corollary to this rule is that "internet users have no right to privacy" in metadata collected through website visits. *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *1,5 (S.D. Cal. Nov. 3, 2025) (dismissing CIPA claims for lack of standing when website allegedly used "tracking beacons" to collect "[IP] address," "browser name [and] version," "geolocation data, email address, mobile ad IDs," "social media identities, . . . [and] cookies" because these data elements simply constituted "metadata" for which "users have no right to privacy"); *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *2, 3 (N.D. Cal. Oct. 2, 2025) (finding "browsing activity, geolocation data, device type, browser type, and 'device fingerprints' . . . insufficient to establish a concrete privacy injury" given the information is not "embarrassing, invasive, or otherwise private information"); *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *1, *4-5 (N.D. Cal. Aug. 6, 2025) (same for "'browser and device data' and 'other identifying information' alongside IP addresses" that defendant allegedly shared with TikTok). Plaintiffs lack a protected privacy interest in this basic information.

Here, none of the information Plaintiffs claim the Website captures is "embarrassing, invasive, or otherwise private information." *Popa*, 153 F.4th at 791. First, Plaintiffs have no

privacy interest in their "device information, referring URLs, session information, user identifiers, and/or geolocation data" (Compl. ¶ 4) because it is merely metadata for which courts agree individuals lack a privacy interest. *See, e.g.*, *Culligan Int'l Co.*, 2025 WL 3064113, at *3-5. Plaintiffs also contend the Website transmitted "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" to third parties. *See, e.g.*, Compl. ¶¶ 4, 33. Ortiz alleges he visited the Website to research Dyson's "air purifiers and other household products," and Nedrebo claims she visited to "research replacement parts and product-support information" and "information regarding replacement batteries and related product solutions." Compl. ¶¶ 86, 96. None of these allegations suggest the collection of private information, let alone any information connected to a personal identifier of Ortiz or Nedrebo. Plaintiffs fail to allege an injury in fact. Accordingly, Plaintiffs cannot premise injury in fact on the non-sensitive and non-personal information third parties allegedly collected on the Website about household products.

Dyson recognizes some courts have found standing in similar cases, *see, e.g.*, *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 863-67 (N.D. Cal. 2025); *Pemberton v. Rest. Brands Int'l, Inc.*, 2025 WL 3268404, at *4 (N.D. Cal. Nov. 24, 2025), but Plaintiffs' dearth of allegations regarding the collection or disclosure of their own information means Plaintiffs have not sufficiently alleged Article III standing. *See Barrales*, 2026 WL 2212867, at *4 (analyzing *Haleon* and *Pemberton* but dismissing identical allegations for lack of standing because "most of the allegations are framed in terms of the collective class experience or the experience of a composite consumer" and not "the named [p]laintiffs' specific experiences with [d]efendant's websites").

### C. Plaintiffs Fail to Allege Their Information Diminished in Value

Plaintiffs' conclusory allegations that the value of their private and personally identifiable information was diminished do not survive dismissal. To plead an injury-in-fact, Plaintiffs must adequately allege "both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market." *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp.

3d 1220, 1229 (N.D. Cal. 2022) (quoting *Svenson v. Google Inc.*, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016)). That a plaintiff's information may have value for a defendant "cannot serve to establish that plaintiff has personally lost money or property" to support standing. *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021). "[S]imply because a plaintiff's information 'is valuable in the abstract,' and simply because a company 'might have made money from it,' … does not mean that the plaintiff has 'lost money or property as a result.'" *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024). Indeed, "[c]ourts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *Welborn v. IRS*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) (collecting cases); *see also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 930 ("When confronted with data privacy claims similar to the ones brought by Plaintiffs, courts have found insufficient for standing purposes generalized assertions of economic harm based solely on the alleged value of personal information.").

Here, the Complaint makes only generalized allegations about the alleged value of certain data, *see* Compl. ¶¶ 83-85, and summarily alleges "Plaintiffs and Class members have also suffered harm in the form of diminution of the value of their private and personally identifiable information and communications." Compl. ¶ 174. Plaintiffs do not plausibly allege that their own information has value, "that they personally lost the opportunity to sell their information," or "that the value of their information was somehow diminished after it was collected by [a third party.]" *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 931-32. Therefore, "[b]ecause Plaintiff[s] do[] not allege that [they] ha[ve] ever sold that data in the past or intend[] to sell it in the future, [their] alleged injury based on an impairment in [their] ability to sell [their] own data is purely hypothetical and insufficient to confer standing." *Sisti v. Bosley Inc.*, 831 F. Supp. 3d 979, 988 (C.D. Cal. 2026).

The Court's analysis can and should end here, and dismissal should be granted.

## VI. PLAINTIFFS FAIL TO PLEAD THEIR CLAIMS

### A. Plaintiffs' Non-Personalized Allegations Do Not Satisfy Rule 8

To survive dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In the website-tracking context, plaintiffs cannot state a claim premised on online privacy when their complaint does not contain allegations regarding how their own information was impacted. *See Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, at *1 (9th Cir. 2024) (affirming dismissal of CIPA claim when the "allegations about [the plaintiff's] own interactions with the [] website [we]re sparse" and failed to "allege that she herself actually made any communications that could have been intercepted").

Here, the Complaint devotes dozens of pages to third-party tracking technologies in the abstract but contains almost no factual allegations about Plaintiffs' own experiences. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (dismissing CIPA claims and noting "[w]hile [p]laintiffs provide an example of a search by a hypothetical patient, they fail to state what information they each provided to Defendant, via their browsing activity, that was subsequently disclosed to Meta."). This pleading deficiency requires dismissal of each claim.

*i.* *__Invasion of Privacy and Intrusion Upon Seclusion Claims__*

Plaintiffs cannot allege an egregious or highly offensive privacy violation when they fail to allege that their information was collected or disclosed. Generally alleging that the Website disclosed "Private Communications" to third parties is insufficient. *See Cousin*, 681 F. Supp. 3d at 1127 (dismissing privacy claims because plaintiffs only "generally allege[d]" that various data elements "were disclosed to Meta on Sharp's public website" and "d[id] not allege ***they*** provided this information.") (emphasis added); *Barrales*, 2026 WL 2212867, at *10 (dismissing claims because "[p]laintiffs have not alleged sufficient facts regarding their specific experiences with [defendant's] websites").

*ii.* *__CIPA Wiretapping and Pen Register Claims__*

Plaintiffs cannot allege a Section 631(a) wiretapping claim unless they allege the third parties "read[], or attempt[ed] to read, or to learn the contents" of their communications. Cal. Penal Code § 631(a). Plaintiffs must allege the interception of "the substance, purport or meaning of [the] communication" rather than merely "record information regarding the characteristics of the message that is generated in the course of [that] communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Plaintiffs do not allege the "contents" of ***their***

communications were intercepted because they do not allege ***they*** ever inputted data on the Website. *See* Compl. ¶¶ 86-87, 96-97 (alleging merely browsing). Similarly, Plaintiffs must allege the "record[ing] or decod[ing]" of "dialing, routing, addressing, or signaling information" to state a pen register claim. Cal. Penal Code § 638.50(b). But again, Plaintiffs fail to allege that they shared any of ***their*** information that could plausibly fall under the pen register statute. Multiple courts in this district have dismissed identical CIPA claims by Plaintiffs' counsel on these grounds. *See*, *e.g.*, *Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1136, 1137 (N.D. Cal. 2025) (wiretapping and pen register claims); *D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 937 (N.D. Cal. 2026) (same); *Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *6 (N.D. Cal. May 21, 2026) (wiretapping claim).

*iii.* *Unjust Enrichment Claim*

Without alleging what information was actually collected, Plaintiffs cannot identify any benefit conferred or any expense incurred. Allegations about what cookies generally "can" do or what data "may" be collected are insufficient. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 835 (N.D. Cal. 2020) ("Plaintiffs have not pleaded any description of the 'personal information' that [d]efendants allegedly used. Without such facts, [p]laintiffs' assertion that [d]efendants garnered 'substantial profits' from the information is purely conclusory.").

**B. Plaintiffs' Claims Fail Under Rule 8 Because Plaintiffs Fail to Adequately Plead When Their Claims Arose or Application of the Discovery Rule**

"Courts often dismiss claims under Rule 8 when plaintiffs fail to allege approximately when the actionable misconduct occurred." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020) (collecting cases).

Plaintiffs fail to allege that any of their six claims are timely. They summarily allege that their claims arose from their alleged Website visit(s) "during the last four years," which is insufficient to plead that each claim is timely. Compl. ¶¶ 86, 96. The longest applicable statute of limitations here is three years, and some claims are subject to a much shorter time period. *See also Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1082 (S.D. Cal. 2023) ("CIPA is subject to a one-year statute of limitations."); Cal. Civ. Proc. Code § 335.1 (two-year

statute of limitations for invasion of privacy and intrusion upon seclusion claims); *id.* § 338(d) (three years for fraud); *In re Asyst Techs., Inc.*, No. C-06-04669 EDL, 2008 WL 2169021, at *19 (N.D. Cal. May 23, 2008) (three years for unjust enrichment sounding in fraud).

Plaintiffs cannot fall back on the discovery rule because to invoke it, Plaintiffs must plead facts to show "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (emphasis in original) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 921 (Cal. 2005)). Yet, Plaintiffs plead no such facts that describe when or how they discovered the alleged conduct on the Website. At most, they allege that "a later investigation" at an unspecified time revealed "Defendant's conduct," *Id.*, but "[do] not explain when [they] discovered the alleged fraud," any "facts showing the manner of discovery," or "any inability to discover the fraud despite diligence." *De Ayora v. Inspire Brands, Inc.*, 2026 WL 1653483, at *4 (N.D. Cal. June 8, 2026) (finding CIPA claims time-barred in identical case of Plaintiffs' counsel). Plaintiffs offer only "[c]onclusory allegations of diligence," which "cannot suffice." *O'Neill v. California Physicians' Serv.*, 2025 WL 3207416, at *6 (N.D. Cal. Nov. 17, 2025); *Keilholtz v. Lennox Hearth Prods.*, 2009 WL 2905960, at *4 (N.D. Cal. Sept. 8, 2009) (holding claims based on alleged misrepresentations were barred by the statute of limitations because the plaintiff "fail[ed] to plead sufficient facts regarding their lack of knowledge of Defendants' alleged fraud, lack of the means to discover the alleged fraud and how and when the alleged fraud was actually discovered"); *Flat v. Ford Motor Co.*, 678 F. Supp. 3d 1138, 1141 (N.D. Cal. 2023) (same). Accordingly, Plaintiffs do not allege sufficient facts to invoke the discovery rule.

## VII. CLAIMS 1–2: PLAINTIFFS' INVASION OF PRIVACY CLAIMS FAIL TO ALLEGE INTENTIONAL OR "HIGHLY OFFENSIVE" CONDUCT

Even if Plaintiffs had sufficiently alleged *their* information was collected, their claims fail on additional, independent grounds.

Courts consider intrusion upon seclusion and invasion of privacy claims together. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Courts first ask whether the complaint alleges the defendant "'***intentionally intrude[d]***, physically or otherwise, upon the

solitude or seclusion of another." *Shulman v. Group W Prod., Inc.*, 955 P.2d 469, 490 (Cal. 1998) (emphasis added). Second, courts determine whether the invasion of privacy is "sufficiently serious in nature, scope, and actual or potential impact to constitute an ***egregious breach of the social norms*** underlying the privacy right." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020) (emphasis added).

*i. Plaintiffs Fail to Allege an Intentional Invasion of Privacy*

The Complaint does not (and cannot) allege intentional conduct. Instead, Plaintiffs allege cookies were placed due to defects in the Preference Center rather than by any intentional conduct. *See* Compl. ¶ 35 ("Defendant failed to prevent cookies from being transmitted . . ."). These claims fail because they rely on an alleged error. *See Shulman*, 955 P.2d at 490 (noting defendant must have "intentionally intrude[d]"); Judicial Council of California Civil Jury Instruction (CACI) No. 1800; Intrusion into Private Affairs (2026 edition) ("To establish this claim, . . . [a plaintiff] must prove all of the following: . . . That [a defendant] ***intentionally intruded***[.]") (emphasis added).

*ii. Plaintiffs' Allegations Preclude a Reasonable Expectation of Privacy*

As set forth above, *supra* Section VI.A.i, Plaintiffs do not allege they provided any of their information (including personally identifying information) on the Website or that Dyson collected or shared any private information about them. Thus, there can be no violation.

*iii. The Disclosure of the Information Is Not Highly Offensive*

The Complaint alleges disclosure of "Private Communications," which includes "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device and user information, referring URLs, session information, user identifiers, and/or geolocation data." Compl. ¶ 33. Disclosure of these data elements is ***not*** "highly offensive." *See In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (disclosure of "personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and other information" not highly offensive); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (same for browsing history); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012)

(same for unique device identification number, geolocation information). "Even disclosure of very personal information"—which is ***not*** present here—"has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014).

Plaintiffs may attempt to rely on decisions in similar cookie-banner lawsuits that have not dismissed these claims at the pleading stage because the purported "misrepresentations" in the cookie banner are "a kind of 'plus' factor that is significant in making a privacy intrusion especially offensive." *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *14 (N.D. Cal. Oct. 16, 2025).

Dyson disagrees and respectfully requests this Court follow the better-reasoned *Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026). There, the plaintiff similarly alleged that cookies continued to deploy after a user "selected the 'required-only' cookie option" in the website's consent banner. Yet, the court was careful not to merge the "intrusion" and "highly offensive" elements and found that the cookie banner's "misrepresentation goes only to the first element: whether there was an intrusion into a private place" but leaves unresolved "whether [a] [p]laintiff had 'an objectively reasonable expectation of seclusion or privacy in . . . the data.'" *Id.* (citation omitted). The court recognized "that some other Courts have held that the misrepresentation alone is enough to meet the highly offensive bar, but the Court does not find the reasoning persuasive." *Id.* Regarding the "highly offensive" element, the court found that aside from the misrepresentation, the plaintiff failed to allege the collection or disclosure of any highly offensive information. *See id.* at *5-6.

The same is true here: Even if there was an inadvertent misconfiguration, Plaintiffs still fail to allege that the disclosure of information related to browsing Dyson's household products is "highly offensive." Accordingly, Plaintiffs fail to satisfy either prong of the combined inquiry, and both claims fail.

## VIII. <u>CLAIMS 3–4: PLAINTIFFS' CIPA CLAIMS FAIL</u>

### A. <u>The Section 631(a) Wiretapping Claim Fails to Allege the Contents of Plaintiffs' Communications or Intent to Commit an Unlawful Wiretap</u>

Plaintiffs fail to state a wiretapping claim under Section 631(a) of CIPA. Section 631(a)

prohibits "three distinct and mutually independent patterns of conduct: [(1)] intentional wiretapping, [(2)] wilfully attempting to learn the contents or meaning of a communication in transit over a wire, and [(3)] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Ct.*, 583 P.2d 737, 741 (Cal. 1978). A "fourth basis for liability" exists for anyone who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" any of the other three 631(a) bases for liability. Cal. Penal Code § 631(a); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). Plaintiffs do not adequately plead a violation of any of the four clauses.

*i.* *No Direct Liability Under Section 631(a)'s First Three Clauses*

***Clause 1*****:** The "overwhelming weight of authority" limits the first clause of Section 631(a) to its plain text—*i.e.*, "telegraph[s] or telephone wire[s]." Cal. Penal Code § 631(a); *Mastel*, 549 F. Supp. 3d at 1135 (holding the first clause is inapplicable to wiretapping via the Internet, including wiretapping on a smartphone's mobile web browser). It is inconsequential that Plaintiffs (vaguely) allege they visited the Website on a "device." *See, e.g.*, Compl. ¶¶ 92, 102. This does not bring the communications within the first clause, and there is no basis for liability. *See Mastel*, 549 F. Supp. 3d at 1135 (rejecting argument that a "tool or device" exclusive to iPhones qualifies as a "telephone instrument" under the first clause).

***Clause 2*****:** Dyson cannot be liable for "wilfully attempting to learn the contents or meaning of a communication in transit over a wire" (Cal. Penal Code § 631(a)) because Plaintiffs allege Dyson "owns and operates" the Website. Compl. ¶ 26. Dyson is therefore a party to the communications. "[I]t is established that a party to the communication cannot be liable for recording its own conversations under § 631(a)." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023).

Plaintiffs also fail to allege interception while "in transit." *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). In other words, Plaintiffs do not describe how the "Third Parties" acquired, read, or attempted to read their communications during transmission. Plaintiffs offer only generalized and conclusory allegations on this point, which fail to adequately allege this element. *See* Compl. ¶¶ 68-75; *see, e.g.*, *Rodriguez v. Google LLC*, 2022

WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."). Thus, "the allegations do not specify when the information stored in the cookies is transmitted. At most, the complaint describes that when a user takes a certain action, a cookie might send information to a third party" but not "when this transmission occurs" or "whether the cookie sends this information immediately or contemporaneously with the information's creation." *Ortiz v. Deckers Outdoor Corp.*, 2026 WL 1243675, at *3 (N.D. Cal. May 6, 2026). These deficiencies further doom the claim. *See Firlej v. Petrosian Esthetic Enters., LLC,* 2026 WL 2575938, at *5 (C.D. Cal. Aug. 31, 2026) (dismissing claim and cautioning that "Plaintiff must still demonstrate ***when*** such reading of ***her*** communications occurred, and whether they occurred either during or after transmission of the communications") (emphasis added).

And, for the reasons outlined in Section VI.A.ii, Plaintiffs fail to allege their visits to the Website involved the interception of the "contents" of their communications, as required under the second clause. *See* Compl. ¶¶ 151-61.

***Clause 3*: ** Section 631(a)'s third clause is derivative of the first two and necessarily fails. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 827 ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses. Because [p]laintiffs have not done so, they also have failed to plead a violation of the third clause of § 631(a).").

*ii.* *No Aiding and Abetting Liability Under the Fourth Clause*

The fourth clause of 631(a) applies when a defendant "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a). Dyson respectfully asks this Court to follow the other courts that, for aiding and abetting liability, require a website operator to have "both knowledge of the conduct that will violate the statute ***and a purpose of aiding, agreeing with, or employing the third party to commit those acts***." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (emphasis added); *Valenzuela v. Kroger Co.*, 2025 WL 851075, at *3 (C.D. Cal. Mar. 13, 2025) ("The Court finds more persuasive those rulings that

impose a scienter requirement on [Section 631(a)], consistent with California law when a statute lacks an explicit scienter requirement."). Under these cases, Plaintiffs also must plead "[the third parties] knew or should have known that the data it received from [Dyson] was collected without users' consent." *B.K. v. Desert Care Network*, 2024 WL 5338587, at *3 (C.D. Cal. Aug. 22, 2024).

***Dyson had no intent to aid and abet an unlawful wiretap*:** To the extent Plaintiffs allege Dyson intended to violate Section 631(a), their allegations are insufficient. In *Esparza v. UAG Escondido A1 Inc.*, the plaintiff alleged an aiding and abetting theory because defendant embedded a third-party's chat software onto its website. *See* 2024 WL 559241, at *1 (S.D. Cal. Feb. 12, 2024). The court held that simply alleging a website operator knowingly implemented certain software was insufficient to establish aiding and abetting under clause four. *Id.* at *6. Similarly, in *Smith v. YETI Coolers, LLC*, the court found that a website operator that knowingly implemented third-party software to "collect[] consumers' sensitive information" did not aid or abet that third party because it did not "knowingly agree[] with or employ[] [the third party] to engage in conduct that violated the wiretapping statute." 2025 WL 877127, at *1 (N.D. Cal. Mar. 14, 2025). "Provid[ing] information or access to a third party without any knowledge or intent that the third party will use the information in a manner that violates the statute" is not enough. *Smith*, 754 F. Supp. 3d at 942-43 . Instead, "the defendant must be acting with the third party *in order to* have the third party perform acts that violate the statute." *Id.* at 942.

Plaintiffs allege that Dyson willfully aided and abetted Third Parties "[b]y configuring the Website in [a] manner" that it "caused Plaintiffs' [] browsers to store the Third Parties' cookies and to transmit those cookies alongside Private Communications . . . to the Third Parties without Plaintiffs' and Class members' consent." Compl. ¶ 142. However, Plaintiffs also allege that Dyson used the Cookie Banner to disclose cookies and provide options to customize the Website experience. *See* Compl. ¶ 1. Plaintiffs' allegations demonstrate that Dyson did *not* intend to aid the surreptitious collection of communications. At best, the Complaint suggests that the alleged failure of the Preference Center toggle buttons was a good-faith mistake.

***The "Third Parties" had no intent to unlawfully wiretap*:** Plaintiffs fail to plead that the "Third Parties" have the predicate liability necessary for aiding and abetting because the "Third

Parties" lack the requisite intent. Plaintiffs claim that "[b]y configuring the Website [to use cookies without consent], [Dyson] willfully aided, agreed with, employed, permitted, or otherwise caused the Third Parties to wiretap Plaintiffs" and that "by their cookies and corresponding software code, the Third Parties willfully" intercepted Plaintiffs' communications. Compl. ¶¶ 142-43. These boilerplate allegations fail to discuss whether any third parties intended or were even aware of users' cookie toggle selections in the Cookie Banner. In any event, the "[third parties'] state of mind is the same, regardless of what [Dyson] ultimately do[es] with [the Cookie Banner]" because "if we compare two hypothetical scenarios – one where [Dyson] obtains proper consent, and one where it doesn't – technically, [the third parties'] 'intent' is the same in both scenarios." *Briskin v. Shopify Inc.*, 2026 WL 161441, at *5 (N.D. Cal. Jan. 21, 2026).

At bottom, alleging a website operator allows third-party cookies to operate on its website does not mean those third parties intended to commit an unlawful wiretap. *See, e.g.*, *B.K. v. Desert Care Network*, 2024 WL 5338587, at *3 (rejecting arguments because no showing that Meta knew or should have known that it received data without website operators' consent). The Complaint here lacks allegations that Dyson affirmatively encouraged any third party to circumvent Cookie Banner preferences; rather, Plaintiffs allege the Cookie Banner did not operate as intended. *See* Compl. ¶ 29. Plaintiffs fail to state a claim for aiding and abetting liability under the fourth clause.

### B. Plaintiffs' Section 638.51 Pen Register Claim Fails Because It Does Not Apply to the Internet and, Regardless, Statutory Exclusions Apply[5]

Pen registers track every outbound number that a telephone dials and trap and trace devices record every inbound number that a telephone receives by using electronic impulses to reveal the telephone number. *See Smith v. Maryland*, 442 U.S. 735, 736 n.1 (1979); *United States*

[5] On August 28, 2026, the California Legislature unanimously passed Senate Bill 690 ("SB 690"), which is now before Governor Gavin Newsom for signature. SB 690 provides "[a]n action against a private actor for a violation of Section 638.51 alleged to arise from conduct occurring on an internet website, online application, or mobile application may be brought under this section only by the Attorney General." Critically, SB 690 would "apply retroactively to any pending claim in an action commenced within two years before the operative date of that legislation," which includes this lawsuit. Dyson reserves all rights and will request dismissal of the Section 638.51 claim should SB 690 be enacted into law.

*v. Gonzalez, Inc.*, 412 F.3d 1102, 1112 (9th Cir. 2005), *amended on denial of reh'g*, 437 F.3d 854 (9th Cir. 2006). Plaintiffs allege that the third-party "cookies and the corresponding software code" are "pen registers" because those cookies captured "the IP address and user-agent information" from Plaintiffs' computers or devices. Compl. ¶ 155. This theory fails.

*i.* *<u>The Statute's Plain Language Excludes Website Tracking Technology</u>*

In 2015, the California Legislature enacted Section 638.51 and its accompanying statutes through A.B. 929[6] to allow California law enforcement agencies to install pen register or trap and trace devices like their federal counterparts without running afoul of state law. The plain language limits the application to telephones. Among other requirements, a court order authorizing the use of a pen register or trap and trace device must specify the identity of the person "in whose name . . . the ***telephone line*** to which the pen register or trap and trace device is to be attached," and the number and location of the "***telephone line***" to which the pen register or trap and trace device would be attached. Cal. Penal Code § 638.52(d)(1), (3) (emphasis added). Section 638.52, also enacted as part of A.B. 929, provides that information acquired by a pen register or trap and trace device may only disclose location information "to the extent that the location may be determined from the ***telephone number***." Cal. Penal Code § 638.52(c) (emphasis added).

Numerous California courts have held that the online tracking technology alleged here does not fall within Section 638.51. For example, *Blaker v. NetScout Sys., Inc.* recently dismissed a pen register claim with prejudice because "applying the ordinary rules of statutory construction . . . this statute applies to telephonic communications and not to software on a commercial website." 2026 WL 1709143, at *4 (Cal. Super. Ct. May 27, 2026). Similarly, *Schallert v. Palo Alto Networks, Inc.* rejected a broader interpretation, sustaining a demurrer to a pen register claim without leave to amend. *See* 2026 WL 754028, at *3 (Cal. Super. Mar. 06, 2026). The court emphasized that no "binding, California authority" was before the court "holding that [] CIPA

---

[6] Pursuant to Federal Rule of Evidence 201, Dyson respectfully requests this Court take judicial notice of Assembly Bill 929, which is attached as Exhibit A to the Danaher Declaration. California Assembly Bills are "public legislative documents" that "are clearly noticeable." *Hoffman v. Life Ins. Co. of the Sw.*, 740 F. Supp. 3d 918, 924 (N.D. Cal. 2024) (granting request for judicial notice).

applies to websites." *Id.* at *1. Indeed, no such authority exists. CIPA's pen register provisions (i.e., Section 638.51 and its accompanying provisions), "[c]onstrued together . . . limit the scope of a trap and trace device to telephone lines." *Id.* at *2. Similarly, in granting a motion for judgment on the pleadings without leave to amend, the court in *Rodriguez v. Ink America Int'l Group, LLC* found that "CIPA's structure and history indicate that its pen-register provisions were aimed at telephonic-style surveillance, not at the routine operation of commercial websites or analytical software." 2025 WL 4034985, at *3, 5 (Cal. Super. Dec. 10, 2025). Though Dyson acknowledges contrasting opinions, it respectfully urges this Court to adopt the California trial courts' narrower interpretation.

*ii.* *<u>The Statute's Legislative History Excludes Website Tracking Technology</u>*

A.B. 929's legislative history underscores that the California Legislature did not intend the statutes to apply to websites collecting IP addresses. A.B. 929 does not mention IP addresses or imply they are within the bill. *See* Danaher Decl., Ex. B, Senate Committee on Public Safety Analysis of California Assembly Bill 929, California 2015-2016 Regular Session (June 16, 2015).[7] Instead, the Legislative Counsel's Digest states that A.B. 929 "would clarify that any location information obtained by a pen register or a tra[p] and trace device is limited to the information that can be determined from the ***telephone number***." Danaher Decl., Ex. A, at 1 (emphasis added); *see also* Danaher Decl., Ex. B, at 11 ("Pen registers and tra[p] and trace devices generally track incoming and outgoing ***telephone calls***.") (emphasis added). The legislative history does not suggest the bill was intended to apply to websites or the collection of IP addresses or "user-agent information." And, given that A.B. 929 was enacted ***in 2015***, the Legislature was aware of IP addresses and internet communications. Plaintiffs' invocation of CIPA's preamble language, *see* Compl. ¶ 152, does not extend the statutes to websites and the internet.

---

[7] Dyson also respectfully requests that this Court take judicial notice of the Senate Committee Analysis pursuant to Federal Rule of Evidence 201, which is attached as Exhibit B to the Danaher Declaration. "Proper subjects of judicial notice when ruling on a motion to dismiss include legislative history reports." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222, 1241 (N.D. Cal. 2014); *California Pac. Reg'l Med. Ctr. v. Glob. Excel Mgmt., Inc.*, 2013 WL 2436602, at *2 (N.D. Cal. June 4, 2013) ("Judicial notice of the legislative history of state statutes is appropriate under Federal Rule of Evidence 201.").

Though some other courts have held differently regarding Section 638.51's scope, *see, e.g.*, *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *11-13 (N.D. Cal. July 14, 2025), Dyson respectfully requests this Court to follow those courts that have appropriately employed a narrower interpretation absent relevant binding authority.

*iii.* *Plaintiffs Plead These Tools Generally Capture Contents*

Plaintiffs' generalized wiretapping allegations defeat their specific pen register claim. A "pen register" "records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, ***but not the contents*** of a communication." Cal. Penal Code § 638.50(b) (emphasis added). This exclusion permits claims only as to devices or processes that do not capture the "contents" of a user's communication, rather than muddling its scope with that of CIPA's wiretapping statute, which squarely addresses the interception of a communication's "contents." *See* Cal. Penal Code § 631(a). The Complaint overlooks Section 638.50's plain text and separately pleads that "[s]ome of the information collected by the Third Parties' cookies and the corresponding software . . . does not constitute the content of Plaintiffs' and the Class members' electronic communications with the Website." Compl. ¶ 157. Yet, in advancing these contradictory allegations, Plaintiffs have pled themselves out of a pen register claim. *Id.*; *see also Rodriguez v. IMDB.com, Inc.*, 2026 WL 886927, at *3 (Cal. Super. Mar. 24, 2026) ("The pen/trap statute's content exclusion is not incidental; it is what sets a pen/trap apart from a wiretap, and courts have long made that distinction."); *Khan v. ChargePoint Holdings, Inc.*, 2026 WL 483060, at *5 (N.D. Cal. Feb. 20, 2026) ("Contradictory allegations such as these are inherently implausible, and fail to comply with Rule 8.") (citation omitted).

## IX. CLAIM 5: PLAINTIFFS' FRAUD CLAIM FAILS

Under California law, the elements of common law fraud are "[a] misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage." *Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057, 1079 (N.D. Cal. 2009) (emphasis added). Plaintiffs fail to plead any facts with specificity about when or how Dyson's allegedly fraudulent conduct

harmed them and do not allege any resulting damages. Their claim should be dismissed.

**A. Plaintiffs Fail to Plead Their Claim with Particularity Under Rule 9(b)**

Federal Rule of Civil Procedure 9(b) requires the elements of fraud to "be accompanied by 'the who, what, ***when***, where, and ***how'*** of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted) (emphasis added); *Henry's Bullfrog Bees v. Sunland Trading, Inc.*, 2026 WL 1469863, at *1 (9th Cir. May 26, 2026) ("[A] plaintiff must 'detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.'") (citing *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)).

Both Plaintiffs fail to adequately allege ***when*** they visited the Website. Instead, they generally allege that they "visited the Website . . . on one or more occasions during the last four years." Compl. ¶¶ 86, 96. "This level of generality fails to provide [Dyson] with notice of the misconduct alleged. [Dyson] cannot, for example, determine what specific representations regarding cookies were made on [the Website] on the specific dates that [Ortiz] and [Nedrebo] visited those websites or determine how the websites were using any cookies placed on users' devices on those specific dates." *Wiley*, 826 F. Supp. 3d at 1138 (dismissing fraud claim with identical "last four years" general allegations). This deficiency alone dooms their claim. Further, these allegations are particularly relevant for Ortiz, who is alleging the same alleged conduct against other companies. *See supra* n.2.

**B. Plaintiffs Fail to Allege Resulting Damages**

Plaintiffs also fail to allege how they were harmed or that they suffered any resulting damages. *See Helm*, 696 F. Supp. 2d at 1079. Plaintiffs' alleged fraud damages boil down to "diminution of the value of their private and personally identifiable information and communications." Compl. ¶ 174. In similar cases, courts have found such allegations are insufficient. For example, in *Hubbard v. Google LLC*, the plaintiffs alleged that Google collected and used data from YouTube users to generate advertising revenue, that "there is a market for consumers to monetize [p]ersonal [i]nformation," and "published analyses and studies have placed a value in excess of $200 on an individual's [p]ersonal [i]nformation." *Hubbard v. Google*

*LLC*, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024). The court found that "[p]laintiffs do not allege sufficient facts from which the Court may reasonably infer that Defendants' misappropriation reduced the value of [p]laintiffs' information" and an "explanation as to how does not appear so obvious that the Court may simply infer one." *Id.*; *see also Dollar Tree*, 2025 WL 2939229, at *20 (dismissing claim for lack of actual damages in identical lawsuit of Plaintiffs' counsel when "Plaintiffs have not plausibly alleged that they would either sell their data or pay anything to protect their data"); *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 978 (C.D. Cal. 2023) ("In the absence of allegations that [p]laintiff incurred actual financial losses, for example because she wished to sell her browsing data but was unable to do so or would be paid less for the data, she has not plausibly alleged economic injury."). Because Plaintiffs do not allege that they paid anything to browse the Website, they fail to allege "resulting damages."

## X. CLAIM 6: PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS

### A. This Equitable Claim is Foreclosed by *Sonner v. Premier Nutrition Corp.*

"In order to provide equitable relief, 'a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy.'" *Mitchell v. Skillz Platform Inc.*, 2026 WL 2212876, at *6 (N.D. Cal. July 31, 2026) (Martínez-Olguín, J.) (quoting *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313-14 (9th Cir. 2022)). Accordingly, a plaintiff seeking equitable remedies "must allege that they lack an adequate remedy at law." *Hubbard v. Google LLC*, 2024 WL 3302066, at *4 (N.D. Cal. July 1, 2024) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)).

The *Hubbard* court held that "Plaintiffs' allegations of harm focus on economic injuries already suffered," "Plaintiffs do seek damages to remedy their harm," and "the legal remedy of damages should serve as an adequate form of retrospective relief for such harm." *Id.* at *4-6 (dismissing "all of [p]laintiffs' requests for equitable relief," including for injunctive relief, restitution, audit and accounting, and disgorgement of profits, and "all of their claims for unjust enrichment."). "[W]here the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Id.* at *6. Here, Plaintiffs plead an adequate remedy at law, and,

like *Hubbard*, seek damages for alleged injuries. *See* Compl. ¶¶ 123, 133, 149, 161, 179. Plaintiffs "rel[y] on 'the same factual predicates'" under their unjust enrichment claim as alleged under their fraud, deception, and/or misrepresentation claims, for which they allege an adequate legal remedy exists. *Compare* Compl. ¶ 182 ("Defendant created and implemented a scheme to increase its own profits through a pervasive pattern of false statements and fraudulent omissions.") *with id.* ¶ 163 ("Defendant fraudulently and deceptively informed Plaintiffs and Class members that they could reject all cookies, including all Targeting, Functional, and Performance cookies, other than those strictly necessary for the Website to function.") *and* ¶ 172 ("Defendant also gained financially from, and as a result of, its breach."). Under *Sonner* and its progeny, Plaintiffs' unjust enrichment claim and all requests for equitable relief—including the Prayer for "[a]n order for full restitution," "[a]n order requiring Defendant to disgorge revenues and profits wrongfully obtained," and "[a]n order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint"—are foreclosed. Compl. Prayer ¶¶ E, F, G.

**B. <u>Plaintiffs Fail to Allege Dyson Retained Any Benefit</u>**

Generally, "there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, "[t]he Ninth Circuit has explained that '[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution.'" *Rabin v. Google LLC*, 2023 WL 4053804, at *12 (N.D. Cal. June 15, 2023) (quoting *Astiana*, 783 F.3d 753, 762 (9th Cir. 2015)). "To adequately allege unjust enrichment as a quasi-contract claim for restitution, 'a plaintiff must show that the defendant received and unjustly retained benefit at the plaintiff's expense.'" *California Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024). As detailed in Section VI.A.iii, Plaintiffs fail to allege what information of ***Plaintiffs*** was disclosed to Dyson or any other third party or that Dyson obtained a benefit. This claim, accordingly, fails.

**XI. <u>PLAINTIFFS' REQUEST FOR PUBLIC INJUNCTIVE RELIEF FAILS</u>**

The caption of the Complaint and certain allegations refer to public injunctive relief on behalf of "the general public," but no such claim is actually pleaded, and Plaintiffs do not pray

for that relief. Compl. pp. 1 (caption page), 1:1-28 (beginning of allegations), Prayer. Otherwise, Plaintiffs only mention "the general public" in passing: the Complaint mentions "the general public" only four times in a single paragraph regarding the CIPA wiretapping claim (claim three). *See id.* ¶ 150. These references to "the general public" are insufficient. Regardless, Plaintiffs' claims concern only those individuals who encountered the Cookie Banner, disabled certain cookies, and then continued browsing the Website. This is not "the general public." *Cf. McGill v. Citibank, N.A.*, 393 P.3d 85, 90 (Cal. 2017) ("Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief.").

*Grigorian v. Citibank, N.A.* is illustrative. *See* 2024 WL 2106944 (C.D. Cal. Apr. 17, 2024). In *Grigorian*, the court found that public injunctive relief was not implicated where the putative class included individuals who "(1) applied for and [were] denied a Citi credit card or had a Citi credit card that was subsequently cancelled, and (2) have last names ending in -ian or -yan." *Id.* at *3. The court noted that even if an injunction would have "broad public benefits," the proposed injunctive relief "must do more than incidentally benefit the public." *Id.* at *4. Here, like in *Grigorian*, there is a specific subset of individuals seeking specific relief. *See* Compl. ¶ 106 (defining putative class to include "All persons who browsed the Website in the State of California after adjusting the toggle switches in the Privacy Preference Center window to reject all non-strictly necessary cookies"); *see also id.* ¶¶ 95, 105, 110, 149 (seeking injunctive relief on behalf of Plaintiffs and similarly situated putative class). Accordingly, Plaintiffs' fleeting references to "the general public" fail to state a plausible claim for public injunctive relief, and to the extent such a claim is alleged, it should be dismissed.

## XII. CONCLUSION

For each and all of these reasons, Dyson requests that the Court grant its Motion to Dismiss Plaintiffs' Complaint.

Dated: September 9, 2026

DLA PIPER LLP (US)

By: /s/ *Isabelle Ord*

ISABELLE ORD
*Attorneys for Defendant*
*DYSON DIRECT, INC.*